# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### ABERDEEN DIVISION

**CRAYTONIA LATROY BADGER**                                    **PETITIONER**

**v.**                                                                          **No. 1:16cr14-SA**

**UNITED STATES OF AMERICA**                                **RESPONDENT**

## MEMORANDUM OPINION AND ORDER

This matter comes before the court on the motion of Craytonia Latroy Badger to vacate, set aside, or correct his sentence under 28 U.S.C.A. §2255. ECF doc. 70. The government has responded to the motion, and the matter is ripe for resolution.

### Facts and Procedural Posture

Petitioner Badger was an inmate with the Mississippi Department of Corrections, housed at the Chickasaw County Correctional Facility, when an inspection of his personal area was conducted.  ECF doc. 33, pg. 14. The search revealed six (6) handwritten pages of identifying information including, names, dates of birth, social security numbers, and information for various financial accounts, as well as a cell phone. *Id*. The personal information found belonged to other inmates. *Id*. at 15. An investigation determined that Badger had used this data to open credit card accounts and to file false income tax returns. *Id*.at 14-15.

The Secret Service assisted the MDOC Criminal Investigation Division with Badger's case. ECF doc. 60, pg. 28. Investigators recovered a letter in which Badger instructed the recipient to contact his "girl," who was determined to be Lakeisha Wells. *Id* at 33. The letter referenced a Facebook account, email address, and Dropbox account, and directed the recipient to change Badger's passwords. *Id*. Badger's Dropbox and email accounts contained even more

personal information belonging to MDOC inmates. *Id*. at 35. As such, investigators subpoenaed the 2011, 2012, and 2013 tax returns for ninety (90) of the individuals whose information was found in Badger's possession. *Id*. at 37. During that time period, seventy-eight (78) of those individuals had income tax returns filed in their names for a total of $507,791.00 in fraudulent tax refunds. *Id*. at 38-39. The Secret Service and the MDOC Criminal Investigation Division interviewed seventeen (17) of these individuals, all of whom were housed at Parchman. *Id*. at 39. Each of the seventeen (17) inmates interviewed denied either filing a tax return or giving anyone else permission to file on their behalf. *Id*.

The investigation also revealed fraudulent credit cards opened in many inmates' names with an estimated loss of $33,000.00. *Id*. at 41, 45. The inmates denied giving anyone permission to open these accounts. *Id*. at 44. These fraudulent accounts were being used to load prepaid cards to move money from Lakeisha Wells' and Badgers accounts. *Id*. at 45.

Badger was indicted for two (2) counts of possession of counterfeit/unauthorized access devices. ECF doc. 1. Petitioner ultimately pleaded guilty to Count I of the indictment and was sentenced to serve a term of sixty-three (63) months, to run consecutively with a pending Arkansas sentence. ECF doc. 52. Count II was dismissed. *Id*. Badger appealed his conviction and sentence, which was affirmed by the Fifth Circuit Court of Appeals. ECF doc. 66. Aggrieved of this decision, Badger filed a motion to vacate his sentence pursuant to 28 U.S.C.A. §2255. ECF doc. 70. For the reasons discussed herein, Badger's motion is denied.

### Scope of §2255 Review

There are four grounds upon which a federal prisoner may seek to vacate, set aside, or correct his sentence: (1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose the sentence; (3) that the

sentence exceeds the statutory maximum sentence; or (4) that the sentence is "otherwise subject to collateral attack." 28 U.S.C. §2255; *see United States v. Cates*, 952 F.2d 149, 151 (5th Cir.1992). The scope of relief under §2255 is the same as that of a petition for a writ of *habeas corpus*. *Cates*, 952 F.2d at 151.

A defendant seeking relief under 28 U.S.C. §2255 may not do so to raise issues that could have been raised on appeal. *United States v. Walling*, 982 F.2d 447, 448-449 (10th Cir. 1992). A petitioner may not raise constitutional issues for the first time on post-conviction collateral review unless he shows cause for failing to raise the issue on direct appeal and actual prejudice resulting from the error. *United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir. 1992), *cert. denied*, 506 U.S. 1007 (1992); *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991). The burden of showing "cause," an "objective factor external to the defense," rests with the petitioner. *McCleskey v. Zant*, 111 S.Ct. 1454, 1470 (1991). No other types of errors may be raised on collateral review unless the petitioner demonstrates that the error could not have been raised on direct appeal, and if not corrected, would result in a complete miscarriage of justice. *Pierce*, 959 F.2d at 1301; *Shaid*, 937 F.2d at 232. Further, if a claim is raised and considered on direct appeal, a defendant may not raise the issue in a later collateral attack. *Moore v. United States*, 598 F.2d 439, 441 (5th Cir. 1979).

### Badger's Allegations

In his petition (ECF doc. 70), Badger raises the following grounds for relief (as summarized by the Court):

I.     Ineffective assistance of counsel for failing to request a continuance and investigate the "account tax transcript."

II.     Ineffective assistance of counsel for failing to object to the loss calculation based on inconsistent information and to adequately cross-examine the government's witness.[1]

III.    Ineffective assistance of counsel at sentencing for failure to investigate Employer Identification Numbers to determine the legitimacy of the tax returns.

IV.     Ineffective assistance of counsel at sentencing for failure to advise Petitioner that the government offered to negotiate a loss amount that would have reduced the offense by two (2) points.

V.      Ineffective assistance of counsel for failure to cross-examine the government witness on inconsistencies in the presentence report, the case report, and his sworn testimony.

VI.     *Brady* violation for withholding the "Account Tax Transcript."

VII.    Ineffective assistance of counsel for failure to adequately investigate.

IX.     Ineffective assistance of counsel for failure to argue that some of the personal information in Badger's possession was incorrect.[2]

X.      Ineffective assistance of counsel for failure to object to the pre-sentence report.

XI.     Ineffective assistance of counsel for failure to argue that restitution should not have been ordered for the fraudulent tax returns because the Government failed to adequately calculate the amount of loss.

XII.    Ineffective assistance of sentencing counsel for failure to move for a downward departure pursuant to U.S.S.G. §5G1.3.

XIII.   Ineffective assistance of sentencing counsel for failure to adequately review discovery.

XIV.    Ineffective assistance of counsel for failing to effectively cross-examine the Government's witness regarding Dynamic Investment, Inc.

XV.     Ineffective assistance of counsel for failure to object to the inclusion of credit card fraud loss in the total amount of loss.

---

[1] The Court notes that Badger entitled this claim, "The Government proof under the preponderance of the evidence standards was insufficient and unreliable under USSG 2B1.1." However, in his supporting facts, Badger raises several allegations of ineffective assistance of counsel. As such, the Court has deemed this allegation a claim of ineffective assistance of counsel.

[2] The court notes that Badger's petition did not include a Ground Eight but went directly from Ground Seven to Ground Nine. In the interest of clarity, the court has followed Badger's numbering system and omitted Ground Eight.

XVI.    Petitioner's guilty plea was not knowingly and intelligently entered.

XVII.   Ineffective assistance of counsel at change of plea hearing for failing to request a mental evaluation.

XVIII.  Petitioner's criminal history score was erroneously calculated.

Badger also filed a motion to amend his petition (ECF doc. 72), in which he raised the following

additional grounds for relief:

XIX.    Ineffective assistance of sentencing counsel for failure to subpoena original appointed counsel to testify regarding Petitioner's motion to withdraw his guilty plea.

XX.     Ineffective assistance of counsel for failure to adequately investigate and to properly advise Badger prior to the entry of his guilty plea.

In his Memorandum of Law, ECF doc. 73, Badger raises several more grounds for relief, many

of which restate previously raised claims:

XXI.    Ineffective assistance of counsel for failing to file Badger's motion to withdraw his guilty plea.

XXII.   Ineffective assistance of counsel for inducing a guilty plea based on faulty and erroneous legal advice.

XXIII.  Ineffective assistance of counsel for failing to object to the restitution based on unreliable testimony and rebut the testimony with tax transcripts.

XXIV.   Ineffective assistance of counsel for failing to object to the Pre-Sentence Report.

XXV.    Ineffective assistance of counsel for failing to adequately cross-examine the government witness on inconsistencies.

XXVI.   The Government withheld Rule 16 material in violation of *Brady v. Maryland*.

XXVII.      Ineffective assistance of counsel for failing to seek a continuance to further investigate and subpoena tax transcripts.

## *Badger's Allegations of Ineffective Assistance of Counsel*

In his petition, Badger raises several allegations of ineffective assistance of counsel. The U.S. Supreme Court has ruled that such claims are governed by the standard laid out in *Strickland v. Washington*, 466 U.S. 668 (1984). To merit habeas corpus relief on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-prong test set out in Strickland by demonstrating both constitutionally deficient performance by counsel and actual prejudice as a result of such ineffective assistance. *See also Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (summarizing the *Strickland* standard of review). A petitioner's failure to establish both prongs of the Strickland test warrants rejection of his claim. *Moawad v. Anderson*, 143 F.3d 942, 946 (5th Cir. 1998); *Bates v. Blackburn*, 805 F.2d 569, 578 (5th Cir. 1986) (overruled on other grounds).

Under the deficiency prong of the test, the petitioner must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Counsel's performance is considered deficient if "it falls below an objective standard of reasonableness" as measured by professional norms. *Strickland*, 466 U.S. at 688. Judicial scrutiny of counsel's performance is highly deferential and must be considered in light of the services rendered at the time, rather than by a distorted view of 20/20 hindsight. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988). A determination must be made of whether there is a gap between what counsel actually did and what a reasonable attorney would have done under the circumstances. *Neal v. Puckett*, 239 F.3d 683, 687 (5th Cir. 2001). In other words, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "Our scrutiny of counsel's performance is 'highly deferential'"

and we must make every effort 'to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct of the counsel's perspective at the time.'" *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994). Moreover, deficiency should not be assumed merely because the Court disagrees with trial counsels' strategy. *Strickland*, 466 U.S. at 689 (citations omitted). Counsel's services are not evaluated in a vacuum, and all circumstances are considered in determining whether the performance was reasonable under prevailing professional standards. *Lavernia*, 845 F.2d at 498. Finally, there is a strong presumption that counsel has exercised reasonable professional judgment. *Strickland*, 466 U.S. at 689; *Martin v. McCotter*, 796 F.2d 813, 187 (5th Cir. 1986).

To prove prejudice, Petitioner must demonstrate that the result of the proceedings would have been different but for counsel's actions or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. In *Strickland*, the Supreme Court explained that the defendant must make a showing that counsel's errors were "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable," (*Strickland*, 466 U.S. at 687) and demonstrate a reasonable probability that but for counsel's errors, the results of the proceeding would have been different. *Id*. at 694. *See also Mayabb v. Johnson*, 168 F.3d 863,869 (5th Cir. 1998); *Goodwin v. Johnson*, 132 F.3d 162, 170 (5th Cir, 1998). A "reasonable probability" is one sufficient to undermine confidence in the outcome of the proceeding. *Moawad v. Anderson, supra*. An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Summit v. Blackburn*, 795 F.2d 1237,1242 (5th Cir. 1986). A habeas corpus petitioner must affirmatively plead this resulting prejudice. *Bridge v. Lynaugh*, 838 F.2d 770,773 (5th Cir. 1988).

# I. Grounds One, Twenty-Three, and Twenty-Seven: Ineffective assistance of counsel for failing to request a continuance and investigate the "account tax transcript."

In Grounds One, Twenty-Three, and Twenty-Seven, Badger alleges that his counsel was ineffective for failing to request a continuance in order to fully investigate and obtain the "Account Tax Transcript" for each of the fraudulent income tax returns. According to Badger, this transcript would have reflected the amount of money he physically received from the IRS rather than the amounts listed on the fraudulent tax returns uncovered through the investigation. Badger argues that he would not have received the full amounts listed on the returns and, therefore, should only have been held liable for the actual amount of money he obtained from the IRS. As such, Badger claims his attorneys were constitutionally ineffective for failing to request a continuance in order to fully pursue this argument.

At Badger's sentencing hearing, U.S. Secret Service Special Agent, Anthony Scott Frazier, testified that the amount of tax loss in this case was reached by totaling the amount of the tax returns, after checking for duplicates, and resulted in a tax loss amount of $507,791.00. ECF doc. 60, pp. 38-39.  In other words, the amount of tax loss proposed by the Government in this case was the total amount of tax loss Badger attempted to perpetrate rather than the amount of money fraudulently received by Badger.  The Fifth Circuit has held that "tax loss is the intended loss, not the government's actual loss." *U.S. v. Phelps*, 478 F.3d 680, 682 (5th Cir. 2007). *See also U.S. v. Moore,* 997 F.2d 55 (5th Cir. 1993).  Furthermore, in *U.S. v. Johnson*, 841 F.3d 299 (5th Cir. 2016), the Fifth Circuit found that it was appropriate to determine tax loss based on the amounts of fraudulent returns.

The amount of loss in this case was correctly calculated. No further investigation on the part of Badger's counsel would have changed the applicable amount of loss and counsel cannot be considered constitutionally ineffective for failing to pursue a fruitless avenue.  Attorneys are

not required by the Sixth Amendment to file meritless motions. *United States v. Gibson*, 55 F.3d 173, 179 (5th Cir.1995); *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir.1990). As such, Badger's allegations in Ground One, Twenty-Three, and Twenty-Seven lack merit.

> ## II. Grounds Two, Five, and Twenty-Five: Ineffective assistance of counsel for failure to cross-examine the government witness on inconsistencies in the presentence report, the case report, and his sworn testimony.

In Grounds Two, Five, and Twenty-Five, Badger asserts that counsel was ineffective for insufficiently cross-examining the Government's witness regarding the loss amount. Specifically, Badger takes issue with the fact that, at the sentencing hearing, the loss amount was reduced from that listed in the pre-sentence report and with a discrepancy in the amount of returns listed. According to Badger, these discrepancies made the witness unreliable and this should have been further explored.

At the sentencing hearing, U.S. Secret Service Special Agent Anthony Scott Frazier testified to the amount of loss. During the hearing, sentencing counsel thoroughly cross-examined Frazier regarding the loss amount. ECF doc. 60, pp. 47-54, 66-69. Further, during direct examination, Frazier acknowledged that the amount of loss listed in the pre-sentence report was wrong and clarified that the actual loss amount due to the fraudulent tax returns was $507,791. *Id*. at 47. As previously discussed, the amount of loss was correctly calculated in this case. Sentencing counsel's cross-examination of the witness was a matter of trial strategy and Badger has not demonstrated that his performance was constitutionally ineffective nor has he shown that he was in anyway prejudiced due to counsel's cross-examination of the witness. As such, these allegations must also fail.

### III.     Ground Three: Ineffective assistance of counsel at sentencing for failure to investigate Employer Identification Numbers to determine the legitimacy of the tax returns.

In Ground Three, Badger claims that his sentencing attorney should have investigated the legitimacy of the tax returns he filed.  Badger asserts that the Employer Identification Numbers (EINs) on the returns would have indicated who filed the returns. He argues that some of the inmates who had fraudulent tax returns filed in their names, may have taken their returns to a "tax company" for filing, and Badger would not have been responsible for those filings, which would have affected the loss amount.

As noted above, in this case, the personal information of multiple individuals was found in Badger's cell while he was incarcerated. Investigators subpoenaed the 2011, 2012, and 2013 tax returns for ninety (90) of the individuals whose information was found in Badger's possession. *Id*. at 37. During that time period, seventy-eight (78) of those individuals had income tax returns filed in their names for a total of $507,791.00 in fraudulent tax refunds. ECF doc. 60 at 38-39. There is nothing in the record to indicate that anyone other than Badger filed the fraudulent returns nor has Badger has offered any evidence to support his assertion that further investigation would have proved otherwise.  As the Fifth Circuit has held:

> This Court has made clear that conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding. *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983).  "In the absence of a specific showing of how these alleged errors and omissions were constitutionally deficient, and how they prejudiced his right to a fair trial we [can find] no merit to these [claims]." *Barnard v. Collins*, 958 F.2d 634, 642 (5th Cir. 1992).

*Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000). Therefore, this conclusory allegation is not a valid claim before this Court.

#### IV.    *Ground Four: Ineffective assistance of counsel at sentencing for failure to advise Petitioner that the government offered to negotiate a loss amount that would have reduced the offense by two (2) points.*

In Ground Four, Badger complains that his sentencing counsel failed to advise him that accepting responsibility for his actions could have resulted in a reduction in the guideline range. In fact, Badger did receive a two (2) point reduction for the acceptance of responsibility, which the Court acknowledged at the sentencing hearing. ECF doc. 60, pg. 14. As such, even assuming *arguendo* that sentencing counsel failed to adequately advise Badger regarding the acceptance of responsibility, Badger suffered no prejudice as a result and this claim must fail.

Badger further asserts that counsel did not inform him the Government was allegedly willing to negotiate a loss amount less than $250,000, which would have decreased the advisory sentence, until after the sentencing hearing. ECF doc. 70, pg. 12. However, in the affidavit attached to his petition, Badger states:

> Counsel Levidiotus advised that the government wanted me to agree to a specific loss amount under $250,000 in which would have decreased my sentence range to 41-51 months, but we were not going to accept it, because the government cannot prove the lost. I advised counsel that I would accept it if he ask the government to recommend the sentence to run concurrent. If not I would not. Counsel never relayed the message to the government.

ECF doc. 70, pg. 28. This statement contradicts Badger's original allegation that counsel did not inform him of the alleged offer until after the sentencing hearing.

Further, Counsel Levidiotus was not appointed as Badger's counsel until after Badger had filed a motion to withdraw his guilty plea.  In other words, by the time Levidiotus was appointed, Badger had already pleaded guilty. At the hearing on Badger's motion to withdraw his plea, the government asked him whether he was seeking to withdraw his plea because he did not "want to be sentenced for the whole $500,000 in false returns …." ECF doc. 59, pg. 22.

Badger acknowledged that he challenged the amount of loss. *Id*. Badger has not demonstrated that the government was willing to negotiate a reduction in the loss amount or recommend a concurrent sentence, which Badger contends was necessary for him to agree to plead to a lower amount. Further, Badger has not demonstrated that the Court would have agreed to a concurrent sentence. In fact, at the sentencing hearing, the Court explained why a consecutive sentence was warranted in this case. ECF doc. 60, pg. 105-107.

"[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye,* 566 U.S. 134 (2012). In order to demonstrate prejudice:

> defendants must demonstrate a reasonable probability they would
> have accepted the earlier plea offer had they been afforded
> effective assistance of counsel. Defendants must also demonstrate
> a reasonable probability the plea would have been entered without
> the prosecution cancelling it or the trial court refusing to accept it.

*Id*. at 148. "[I]t is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence to less prison time." *Id*. Badger cannot meet this standard and, as a result, this claim must fail.

## V. *Ground Seven: Ineffective assistance of counsel for failure to adequately investigate.*

In Ground Seven, Badger complains that counsel failed to adequately investigate his case by failing to interview several non-inmate witnesses, including Shane Gross and Timothy Rier, to determine the legitimacy of their tax returns. Badger argues that the government only interviewed 17 of the individuals for whom the tax returns were filed and his counsel should have interviewed the remaining individuals to investigate their filings. Again, Badger asserts that, if these people received their refunds, then Badger should not have been held accountable for that amount of loss.

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In assessing unreasonableness a heavy measure of deference must be applied to counsel's judgments." *U.S. v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) (internal citations omitted). Further the *Green* Court held:

> A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial. *See Gray v. Lucas*, 677 F.2d 1086 (5th Cir.1982); *United States v. Lewis*, 786 F.2d 1278 (5th Cir.1986); *Alexander v. McCotter*, 775 F.2d 595 (5th Cir.1985).

*Id* at 1003. Badger has not specifically alleged what further investigation into these witnesses would have revealed nor has he demonstrated that such an investigation would have altered the outcome of his plea and sentence. As discussed above, the amount of loss was properly calculated based on the amount of the fraudulent income tax returns regardless of what refunds were actually paid.

Further:

> Complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative. [Citation omitted.] Where the only evidence of a missing witnesses' testimony is from the defendant, this Court views claims of ineffective assistance with great caution. *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir.1986). See also *Marler v. Blackburn*, 777 F.2d 1007, 1010 (5th Cir.1985); *Murray v. Maggio*, 736 F.2d 279, 282 (5th Cir.1984); *United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir.1983); *Buckelew v. United States,* 575 F.2d 515, 521 (5th Cir.1978).

*Sayre v. Anderson*, 238 F.3d 631, 635-636 (5th Cir. 2001). Badger does not claim that, if interviewed, the remaining individuals would have testified that Badger had permission to file their tax returns. On the contrary, Badger simply speculates that further investigation into these individuals may have been useful. As such, Badger cannot demonstrate that counsel was

constitutionally ineffective for choosing not to pursue this avenue. Afterall, "counsel for a criminal defendant is not required to pursue every path until it bears fruit or until all conceivable hope withers." *Lovett v. Florida*, 627 F.2d 706, 708 (5th Cir. 1980). Therefore, Badger's allegation in Ground Seven must fail.

## VI.     Ground Nine: Ineffective assistance of counsel for failure to argue that some of the personal information in Badger's possession was incorrect.[3]

In Ground Nine, Badger asserts that sentencing counsel should have argued that, because some of the information on the fraudulent tax returns was incorrect, Badger should not have been held liable for that amount of loss.  He further argues that counsel should have further investigated the returns to determine if more contained incorrect personal information or were possibly legitimate returns. Badger claims that the Court should reduce the amount of his restitution based on this possibility.

As discussed above, the amount of tax loss was correctly calculated based on the amounts requested in the returns. Whether those returns were honored or payed out is irrelevant to the calculation.  Moreover, this Court has held that Badger's allegations that counsel inadequately investigated the returns is without merit.  Further, the Fifth Circuit has held that, "complaints concerning restitution may not be addressed in §2255 proceedings." *U.S. v Hatten*, 167 F.3d 884, 887 (5th Cir. 1999). Therefore, Badger's allegations in Ground Nine lack merit.

## VII.    Grounds Ten and Twenty-Four: Ineffective assistance of counsel for failure to object to the pre-sentence report.

In Grounds Ten and Twenty-Four, Badger argues that sentencing counsel was  ineffective for failing to adequately investigate his prior state court convictions and sentences. The gist of

---

[3] Again, the court notes that Badger's petition did not include a Ground Eight but went directly from Ground Seven to Ground Nine. In the interest of clarity, the court has followed Badger's numerical system.

the argument is Badger's complaint that his federal sentence was not ordered to run concurrently to his Arkansas state sentence. Badger argues that counsel failed to adequately explain that he was serving a five (5) year and a ten (10) year state sentence consecutively and that counsel should have argued that a consecutive federal sentence in addition to his state sentences was unreasonable and violated the Eight Amendment.

Badger notes that the court originally ordered the sentence to run concurrently and later changed the sentence to be served consecutively to the state court sentence. A review of the sentencing transcript reveals that the court simply misspoke. Immediately after ordering the federal sentence to run concurrently with the state sentences the court stated, "I may have misspoke about concurrent." ECF doc. 60, pg. 99. The court then corrected the sentence to run consecutively. *Id*. at 101.

Further, sentencing counsel did, in fact, object to the sentence as "plainly unreasonable." *Id*. at 105. The court then provided a detailed explanation of the reasoning for the sentence and the order that it run consecutively with Badger's state sentences. *Id*. at 105-107. As such, Badger's allegation that his sentence violates the Eighth Amendment lacks merit. The Supreme Court has held:

> [T]hree factors may be relevant to a determination of whether a sentence is so disproportionate that it violates the Eighth Amendment: (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions.

*Ewing v. California*, 538 U.S. 11, 123 S.Ct. 1179, 1186 (2003), *citing Solem v. Helm,* 463 U.S. 277, 292, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). The Court considered these factors in reaching Badger's sentence. Counsel cannot be considered deficient in challenging Badger's sentence, nor

can Badger demonstrate that he was prejudiced by counsel's representation. As such, Badger's allegation in Grounds Ten and Twenty-Five lack merit.

**VIII.**   ***Ground Eleven:  Ineffective assistance of counsel for failure to argue that restitution should not have been ordered for the fraudulent tax returns because the Government failed to adequately calculate the amount of loss.***

In Ground Eleven, Badger again argues that counsel should have challenged the calculation of the amount of loss due to the fraudulent tax returns and the restitution amount resulting from that fraud. As discussed above, the amount of tax loss was correctly calculated, and counsel cannot be deemed constitutionally ineffective for not further raising meritless objections.  *See Clark*, 19 F. 3d at 966.  Also, as noted above, the Fifth Circuit has held that, "complaints concerning restitution may not be addressed in §2255 proceedings." *Hatten*, 167 F.3d at 887.  As such, Badger's allegations in Ground Eleven lack merit.

**XIV.**   ***Ground Twelve: Ineffective assistance of sentencing counsel for failure to move for a downward departure pursuant to U.S.S.G. §5G1.3.***

In Ground Twelve, Badger argues that sentencing counsel should have moved for a downward departure under U.S.S.G. §5G1.3.[4]  Badger argues that, at the time of his sentencing, he was subject to a ten (10) year sentence in Arkansas for possession of a cell phone while incarcerated, which was used to commit financial fraud. Badger asserts that this device was the same phone he used while incarcerated in Mississippi and, because the Arkansas crimes were similar to the Mississippi crimes, he was eligible for the application of U.S.S.G. §5G1.3.  Badger asserts that, under subsection (d), the Court had the discretion to run his federal sentence concurrently or partially concurrently with his state sentence in order to "achieve a reasonable

---

[4] In his argument in support, Badger cites to §5G1.3(a), however he quotes the language from subsection (d). As such, the Court has interpreted his allegation to be that he was eligible for the application of §5G1.3(d).

punishment" for his federal crimes. §5G1.3(d). According to Badger, his attorney did not adequately investigate the Arkansas sentences and failed to argue that such discretion be used.

Badger has attached two (2) judgments from Columbia County, Arkansas to his petition. The first reflects that Badger was sentenced to five (5) years for commercial burglary. ECF doc. 70-1, pg. 34. Clearly, commercial burglary has no nexus to his crimes of tax and credit card fraud in this case. In the second judgment, Badger was sentenced to ten (10) years for "furnishing prohibited articles." ECF doc. 70-1, pg. 39. However, the documentation provided by Badger provides no further description of this crime.

At sentencing, counsel argued that the Court should impose a *de minimis* sentence considering Badger's substantial state sentence. ECF doc. 60, pg. 95. The Court acknowledged that Badger was currently serving a ten (10) year Arkansas sentence and found that the Arkansas offense was unrelated to the case at hand. *Id*. at 98. The Court specifically cited to U.S.S.G. §5G1.3(d) and ultimately ordered his federal sentence to run consecutively with his state sentence. *Id*. at 98, 101. The Court went on to explain its reasoning, finding that the sentence was reasonable considering the amount of financial fraud committed and the number of victims involved. The Court further noted that it felt it was important for Badger to serve his full federal sentence and the Court would not run the sentence concurrently to Badger's state sentences because it could not predict how the State would ultimately treat Badger's state sentences. *Id*. at 106-107.

The record demonstrates that sentencing counsel did, in fact, argue that Badger should receive a lighter sentence in consideration of his state sentence. However, the Court made clear its reasons for ordering Badger's sentence to run consecutively with his state sentences. Badger cannot demonstrate that counsel was constitutionally ineffective regarding this claim nor that he

was prejudiced by counsel's actions.  As such, Badger is not entitled to habeas relief based in his allegations in Ground Twelve.

## X.        *Ground Thirteen: Ineffective assistance of sentencing counsel for failure to adequately review discovery.*

In Ground Thirteen, Badger asserts that his sentencing attorney received a password protected jump drive containing Rule 16 discovery, which counsel was unable to access.  Badger claims to have attached a letter from counsel stating as much.  However, the letter attached to Badger's petition is only the first page of a letter and contains no such statement. Badger goes on restate several previously raised allegations of ineffective assistance of counsel, but seems to allege that, because counsel did not adequately review the discovery, he was unable to provide effective assistance at sentencing. Badger's claims are not supported by the record.  As noted, the letter attached to Badger's petition is unpersuasive.  Moreover, at sentencing, counsel stated on the record that he received a jump drive from the Government and "I was able to access that catalog."  ECF doc. 60, pg.  86.  Therefore, Badger's allegation in Ground Thirteen lacks merit and is denied.

## XI.        *Ground Fourteen: Ineffective assistance of counsel for failing to effectively cross-examine the Government's witness regarding Dynamic Investment, Inc.*

In Ground Fourteen, Badger asserts that the investigator's report stated that some of the tax refund proceeds were deposited into an account owned by Dynamic Investments, LLC, which he says was owned by a correctional officer.  As such, Badger alleges that sentencing counsel was ineffective for failing to argue that the proceeds deposited into the Dynamic Investment account should not have been included in the loss amount.  As noted above, for the purposes of the loss amount calculation, the Fifth Circuit has held that "tax loss is the intended loss, not the government's actual loss." *U.S. v. Phelps*, 478 F.3d at 682. As such, the loss amount

in this case was correctly calculated based on the amounts claimed in the fraudulent tax returns regardless of where the refunds were deposited. Therefore, counsel cannot be considered constitutionally ineffective for failing to cross examine the investigator on the issue of funds allegedly deposited into an account held by Dynamic Investments and Badger's allegation in Ground Fourteen lacks merit.

## XII. Ground Fifteen: Ineffective assistance of counsel for failure to object to the inclusion of credit card fraud loss in the total amount of loss.

In Ground Fifteen, Badger complains that the amount of credit card fraud was included in the total amount of loss for his case. Badger asserts that the credit card loss was based on his use of prepaid debit cards and this fraud was used to calculate his sentencing but not for restitution. Badger readily admits that any error regarding the credit card loss was "harmless" as it would not have affected his sentence. However, he alleges that counsel should have objected and his failure to do so demonstrates overall ineffective representation.

At sentencing, Agent Frazier testified that an estimated $33,000.00 in credit card fraud had been discovered. ECF doc. 60, pg. 45. Further, Badger testified that he was not loading tax returns on the pre-paid credit cards, but was loading money he made "selling canteen, marijuana, and stuff like this." *Id*. at 73. He went on to explain that "if you're making money in jail, you need a lot of these cards," although he claimed that he had paid people for permission to open the accounts. *Id*. at 75-76. Badger eventually acknowledged that he was "responsible for certain things dealing with those cards, but I'm not responsible for the entire loss like that." *Id*. at 93. The Court ultimately set the loss amount at $540,791, reflecting both the fraudulent tax returns and the $33,000 in credit card fraud. *Id*. at 96. Restitution was set at the same amount. *Id*. at 97. Sentencing counsel objected to the sentence as plainly unreasonable. *Id*. at 105.

Based on the record in this case, the $33,000 in credit card fraud was properly used to calculate to the total loss amount as it was separate and in addition to the tax fraud. Further, as Badger acknowledges, he suffered no prejudice from sentencing counsel's failure to raise the specific objection Badger references in this ground for relief. On the contrary, counsel did an admirable job of challenging the loss amount for both the tax and credit card fraud. However, the loss amount was correctly calculated under the applicable law. Therefore, Badger's sentencing counsel was not constitutionally ineffective regarding the credit card fraud loss amount and Badger's allegation in Ground Fifteen lacks merit.

### XIII. Ground Seventeen: Ineffective assistance of counsel at change of plea hearing for failing to request a mental evaluation.

In Ground Seventeen, Badger asserts that counsel failed to adequately investigate his mental health prior to the change of plea hearing and, as a result, failed to request a mental evaluation. It does not appear that Badger's arguments regarding a mental evaluation asserts an insanity defense.[5] As such, the Court will treat Badger's allegation as a challenge to his competence to enter a guilty plea. The Supreme Court has held, "the standard for competence to stand trial is whether the defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has 'a rational as well as factual understanding of the proceedings against him.' *Ibid.,* (internal quotation marks omitted)." *Godinez v. Moran*, 509 U.S. 389, 396, 113 S.Ct. 2680 (1993), citing *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) ( *per curiam* ).

---

[5] In *Ake v. Oklahoma*, 470 U.S. 68, 83, the Supreme Court held, when a criminal defendant can demonstrate that his sanity at the time of the offense will be a significant factor at trial, he must be afforded a psychiatric evaluation. However, Badger has not alleged that his sanity affected his crimes or that such a defense would have been presented if there had been a trial.

While the pre-sentence report ("PSR") indicates a suicide attempt during Badger's teen years and a suicide threat while incarcerated on this charge, there is no evidence of an actual diagnosis of mental illness. ECF doc. 50, pg. 20. The PSR notes that Badger sent a letter to the U.S. Marshal Service while incarcerated on this charge in which he threatened to "burn myself up Thursday night." *Id*. As a result, the Marshal Service requested that Badger be placed on suicide watch and the probation officer stated he was not aware of any additional incidents. *Id*. Badger's argument hinges on this suicide threat.

At his initial change of plea hearing, Badger stated that he did not suffer from any mental illness or psychiatric condition and had never received any psychiatric treatment. ECF doc. 33, pg. 4.  In his affidavit, Badger states that he answered this way because he believed that "she was asking was I currently mentally ill at the time in her courtroom." ECF doc. 70, pg. 28. Badger states that he had a history of mental illness but acknowledges in his affidavit that he was not "currently mentally ill" at the time of his plea. *Id*. Further, Badger's counsel at the plea hearing stated that he had no reason to doubt Badger's competency. ECF doc. 33, pg. 5. Badger himself acknowledges that he was competent at the change of plea hearing and there is no evidence to the contrary. Therefore, Badger's sentencing counsel was not constitutionally ineffective regarding for choosing not to pursue a mental evaluation and Badger's allegation in Ground Seventeen lacks merit.

### XIV.    *Ground Nineteen: Ineffective assistance of sentencing counsel for failure to subpoena original appointed counsel to testify regarding Petitioner's motion to withdraw his guilty plea.*

In Ground Nineteen, Badger complains that his newly appointed counsel did not subpoena his former counsel to testify at the hearing on his motion to withdraw his guilty plea. Badger alleges that his guilty plea was the result of professional errors by his original counsel and claims

that the failure to subpoena him to the hearing violated Badger's rights under the confrontation clause. As noted above, "Complaints of uncalled witnesses are not favored in federal habeas corpus review …." *Sayre v. Anderson*, 238 F.3d at 635-636. While Badger makes several assertions about his former counsel's actions, he does not provide any evidence of what the attorney would have testified to if called. Such "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding. *Schlang v. Heard*, 691 F.2d 796, 798 (5th Cir.1982) (collecting cases)." *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983).

XV.     ***Grounds Sixteen,[6] Twenty, and Twenty-Two: Ineffective assistance of counsel for failure to adequately investigate and to properly advise Badger prior to the entry of his guilty plea.***

In Grounds Sixteen, Twenty, and Twenty-Two, Badger argues that his original counsel should have interviewed the victims to determine whether their tax returns had been fraudulently filed. In addition, Badger states that counsel failed to advise Badger of available affirmative defenses, the right to subpoena witnesses at trial, and improperly advising him to plead guilty. In Ground Sixteen, Badger asserts that his original counsel was ineffective because he improperly advised him that he would not receive more than a three (3) year sentence if he pleaded guilty. The voluntariness of Badger's plea is discussed fully below. Because Badger's plea was knowingly and intelligently entered, counsel cannot be considered ineffective with regard to his guilty plea. As such, Badger's allegation of ineffective assistance in Ground Sixteen lacks merit.

The crux of Badger's allegations in Grounds Twenty and Twenty-One appear to be that, if counsel had investigated, he may have discovered that some of the victims were not incarcerated

---

[6] In Ground Sixteen, Badger challenges his guilty plea. However, within that ground he also asserts that counsel was ineffective for improperly advising him that, if he pleaded guilty, he would not receive more than a three (3) year sentence. As such, the court will address the ineffective assistance portion of his claim here.

at the time their tax returns were filed and may have filed the returns themselves. Badger argues that if this testimony was presented at trial it would have created reasonable doubt. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In assessing unreasonableness a heavy measure of deference must be applied to counsel's judgments." *U.S. v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) (internal citations omitted). "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *Id*. (internal citations omitted). Badger has not presented any evidence to support his allegations other than his own statements. As such, his allegations of what evidence would have been uncovered and what witnesses may have testified to at trial are highly speculative. Such conclusory allegations fail to establish ineffective assistance of counsel. *Ross, supra*. Therefore, Badger's allegations in Grounds Twenty and Twenty-Two lack merit.

XVI.    ***Ground Twenty-One: Ineffective assistance of counsel for failing to file Badger's motion to withdraw his guilty plea.***

In Ground Twenty-One, Badger asserts that his original counsel was ineffective for failing to file Badger's motion to withdraw his guilty plea. Badger's pro se motion to withdraw his plea was denied. Badger claims that, if counsel had filed his motion, the court may have granted the motion. On August 2, 2016, Badger pleaded guilty to Count I of his indictment. ECF doc. 23. On October 20, 2016, Badger filed a motion to appoint new counsel and seeking to withdraw his guilty plea. ECF doc. 26. In his motion, Badger made numerous allegations that his original counsel had misled him into pleading guilty and sought to withdraw that plea. On November 2, 2016, counsel moved to withdraw from representing Badger, noting that Badger had filed a bar complaint against him and had corresponded with the court directly regarding his representation.

ECF doc. 30. Counsel asserted that, under the circumstances, he had an ethical conflict in continuing to represent Badger. Further, counsel asked for the appointment of new counsel and for a continuance in order to allow Badger's new counsel to prepare for sentencing. On November 3, 2016, the Court granted the motion to withdraw in light of the ethical conflict and appointed Badger new counsel. ECF doc. 31. Badger's argument in support of withdrawing his guilty plea was based solely on alleged ineffective assistance of counsel. In fact, in his other grounds for relief, Badger has argued that his original counsel should have been called as a witness at the hearing on his motion to withdraw his plea. As such, counsel faced an ethical conflict in pursuing Badger's allegation. Therefore, it was reasonable for counsel to withdraw from the case and request that new counsel be appointed. Moreover, after a hearing, this court ultimately denied Badger's motion to withdraw his plea. Attorneys are not required by the Sixth Amendment to file meritless motions. *United States v. Gibson*, 55 F.3d 173, 179 (5th Cir.1995); *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir.1990). For all of these reasons, counsel cannot be considered ineffective based on Badger's allegations in Ground Twenty-One.

### *Badger's Remaining Claims*

I.      *Grounds Six and Twenty-Six: Brady violation for withholding the "Account Tax Transcript."*

In Grounds Six and Twenty-Six, Badger asserts that the Government committed a *Brady* violation in failing to provide "Account Tax Transcripts" for the fraudulent income tax returns. Badger again alleges that these transcripts would have shown the amount of money refunded by the I.R.S. Badger asserts that adjusted amount should have been used to calculate the loss in this case.

In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either

to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Since the decision in *Brady*, the standard has evolved further:

> To establish a *Brady* claim, a habeas petitioner must demonstrate that (1) the prosecution suppressed evidence, (2) the evidence was favorable to the petitioner, and (3) the evidence was material. *U.S. v. Ellender*, 947 F.2d 748, 756 (5th Cir. 1991) (citations omitted). In assessing the materiality of suppressed evidence, the Supreme Court explained that "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *U.S. v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*, at 682, 105 S.Ct. at 3383. The Court further observed that a "reasonable probability" of a different result is shown when the non-disclosure "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the jury verdict." *Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995) (footnote omitted). "[A] showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal." *Id.*, 115 S.Ct. at 1566. Finally, the materiality inquiry is applied to "the suppressed evidence collectively, not item-by-item." *Id.*, 115 S.Ct. at 1567.

*Spence v. Johnson*, 80 F.3d 989, 994 (5th Cir. 1996). The Fifth Circuit has taken the standard one step further and held that "the materiality of *Brady* evidence depends almost entirely on the value of the evidence relative to the other evidence mustered by the State." *Id.* at 995 (citations omitted). The Fifth Circuit has also concluded that the *Brady* rule "applies only to impeachment and exculpatory evidence; neutral or inculpatory evidence lies outside its coverage" *U.S. v. Nixon*, 881 F.2d 1305, 1308 (1989). Finally, it should be noted that "the discovery of a *Brady* violation does not automatically entitle a defendant to a new trial." *Id.*

As discussed above, the Fifth Circuit has held that "tax loss is the intended loss, not the government's actual loss." *U.S. v. Phelps*, 478 F.3d at 682. Furthermore, in *U.S. v. Johnson*, 841 F.3d 299 (5th Cir. 2016), the Fifth Circuit found that it was appropriate to determine tax loss based on the amounts of fraudulent returns. As such, the "Account Tax Transcripts" were not

material to Badger's case because the amount actually refunded by the I.R.S. was irrelevant to the loss calculation. The tax loss was properly calculated in this case and Badger's allegations in Grounds Six and Twenty-Six lack merit.

## II.     Ground Sixteen: Petitioner's guilty plea was not knowingly and intelligently entered.

In Ground Sixteen, Badger alleges that his guilty plea was invalid.  Badger alleges that he only pleaded guilty because his original counsel told him that he would not face more than a three (3) year sentence and did not tell him that the Court could upwardly depart from the Guidelines. The Supreme Court has held:

> The standard as to the voluntariness of guilty pleas must be essentially that defined by Judge Tuttle of the Court of Appeals for the Fifth Circuit:
>
> "(A) plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).' 242 F.2d at page 115.' [Footnote excluded].

*Brady v. United States*, 397 U.S. 742, 755, 90 S. Ct. 1463, 1472, 25 L. Ed. 2d 747 (1970)

At the change of plea hearing, the court reviewed the application of the sentencing guidelines with Badger. Badger acknowledged that the court could impose a sentence that was more severe or less severe than that required by the Guidelines and stated under oath that he not been promised a specific sentence. ECF doc. 33, pg. 13. The court found that Badger's plea was knowingly and intelligently entered. Id. at 16. At the hearing on Badger's motion to withdraw his plea, the court noted that there was nothing in the transcript of the change of plea hearing to indicate that Badger did not understand what he was being told. ECF doc. 59, pg. 65.  Badger acknowledged under oath that he was aware the court was not bound by the Guidelines.

Furthermore, the Plea Supplement, which was signed by Badger, states that "[t]here is no agreement as to the sentence to be imposed, which will be in the sole discretion of the Court…." ECF doc. 22, pg. 2. The Plea Agreement stated that the maximum sentence was ten (10) years. ECF doc. 21. At his change of plea hearing, Badger stated that his original counsel gave him four (4) pieces of paper,[7] which would have been the Plea Agreement and Plea Supplement and read the pages to him because Badger wanted to "read them and get a good understanding of them." ECF doc. 59, pg. 5. The totality of the record in this case supports the court's finding that Badger's guilty plea was voluntarily and intelligently entered. As such, Badger's allegation in Ground Sixteen lacks merit.

### III.     Ground Eighteen: Petitioner's criminal history score was erroneously calculated.

In Ground Eighteen, Badger asserts that the Pre-Sentence Report incorrectly calculated his criminal history score as 28 when it should have been 30. Badger claims that the report omitted his consecutive Arkansas sentence. He argues that, if this conviction had been included, the court may have decided to run his federal sentence concurrently with his Arkansas sentences. As discussed above with regard to Grounds Ten and Twenty-Four, at sentencing the court clearly stated the reason for the decision to order Badger's federal sentence to run concurrently to his state sentences. The Court further noted that it felt it was important for Badger to serve his full federal sentence and the Court would not run the sentence concurrently to Badger's state sentences because it could not predict how the State would ultimately treat Badger's state sentences. *Id*. at 106-107. A higher criminal history score would not have affected this decision. As such Badger's allegation in Ground Eighteen lacks merit.

---

[7] The Plea Agreement and Plea Supplement are each two (2) pages long, totaling four (4) pages.

**Conclusion**

As discussed above, Badger's claims lack merit, and the instant motion to vacate, set aside, or correct Craytonia Latroy Badger's sentence will be denied. A final judgment consistent with this memorandum opinion will issue today.

SO ORDERED, this the 11th day of March, 2020.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE